UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHELLEY JO LAMBERT,

        Plaintiff,                   CIVIL ACTION NO. 12-11782

       v.                           DISTRICT JUDGE ROBERT H. CLELAND

                                  MAGISTRATE JUDGE MARK A. RANDON
COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

## REPORT AND RECOMMENDATION
## ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Plaintiff Shelley Jo Lambert challenges the Commissioner of Social Security's final denial of her benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 8, 12). Judge Robert H. Cleland referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 2).

**I.    RECOMMENDATION**

Because substantial evidence supports the ALJ's decision, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    REPORT**

    *A.    Administrative Proceedings*

Plaintiff applied for disability and disability insurance benefits on January 10, 2008, alleging she became disabled on August 17, 2007 (Tr. 15). The Commissioner initially denied Plaintiff's application (Tr. 15). Plaintiff appeared with counsel for a video hearing before

Administrative Law Judge ("ALJ") Sherry Thompson, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 15-29). Plaintiff requested an Appeals Council review (Tr. 9-10). On April 11, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.     *ALJ Findings*

Plaintiff was 42 years old on her alleged disability onset date. She has a high school education and past relevant work as an auto assembler and receptionist (Tr. 28). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that she had not engaged in substantial gainful activity since her alleged disability onset date (Tr. 17).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: fibromyalgia,[1] major depression, degenerative arthritis in her knee joints bilaterally, migraine headaches, sleep apnea and asthma (Tr. 17).

At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or medically equaled one of the listings in the regulations (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> light work . . . except that: [Plaintiff] can lift 10 pounds frequently and 20 pounds occasionally; [Plaintiff] can sit for [six] hours and can stand/walk for [six] hours, both in an [eight] hour workday; [Plaintiff] can frequently use her hands for fingering and feeling; [Plaintiff] can frequently balance and stoop; [Plaintiff] should never climb ladders, ropes, or scaffolds; [Plaintiff] can occasionally climb ramps, climb stairs, kneel, crouch, and crawl; [Plaintiff] should avoid concentrated exposure to fumes, dust, gases, perfumes, poor ventilation, hazardous machinery, heights, and uneven terrain; and [Plaintiff] should avoid moderate exposure to paint[]. From a mental residual functional capacity assessment perspective, [Plaintiff] can understand, recall, and carry out simple directions/instructions on a sustained basis and at a normal pace. [Plaintiff] should

---

[1]Fibromyalgia is pain and stiffness in the muscles and joints. *See Dorland's Illustrated Medical Dictionary*, 711 (31st Ed. 2007).

>       not be required to make decisions. [Plaintiff] can complete a normal workday and
>       can interact appropriately with co-workers, supervisors, and the general public.
>       [Plaintiff] can adapt to stressors and to routine changes associated with simple,
>       routine, and competitive work.

(Tr. 19).

At step four, the ALJ found that Plaintiff could not perform her previous work as an auto assembler or receptionist (Tr. 28).

At step five, the ALJ denied Plaintiff benefits, finding she could perform a significant number of jobs available in the national economy, such as record clerk (27,225 jobs), hand packer (9,300 jobs), and cashier (16,150 jobs) (Tr. 29).

### C.  Administrative Record

#### 1.  Plaintiff's Hearing Testimony and Statements

Plaintiff testified that she has depression, asthma and constant pain in her joints, lower back and shoulders; she has migraine headaches two to three times a week (Tr. 43-45, 48-49). Plaintiff exercises to help relieve pain and uses a continuous positive airway pressure machine to sleep (Tr. 43, 45).[2] Plaintiff testified that any physical exertion can precipitate an asthma attack, and her depression medication makes her "shaky" (Tr. 44, 48). She needs to take an hour long nap each day (Tr. 50).

Plaintiff can walk 15 minutes, stand 15-20 minutes, sit five minutes in one position (30 minutes if she fidgets in her chair) and lift a gallon of milk (Tr. 45-47). She can also do light housework, shop once or twice a month, prepare "TV dinners," drive (although she frequently

---

[2]"Continuous positive airway pressure therapy (CPAP) uses a machine to help a person who has obstructive sleep apnea (OSA) breathe more easily during sleep." *See* http://www.webmd.com/sleep-disorders/sleep-apnea/continuous-positive-airway-pressure-cpap-for-obstructive-sleep-apnea (last visited January 29, 2013).

gets lost) and follow simple instructions (Tr. 40, 47-48). Plaintiff finds it difficult to squat and hold large objects (Tr. 46). Her lower back hurts when she stoops and bends (Tr. 46).

### 2. Vocational Expert

The VE classified Plaintiff's past auto assembler employment as unskilled work performed at the medium exertional level (Tr. 53). Plaintiff's job as a receptionist was classified as semi-skilled work performed at the sedentary level (Tr. 54).

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual who: is Plaintiff's age and has Plaintiff's education and vocational experience. The individual can lift 10 pounds frequently and 20 pounds occasionally; sit, stand and walk for six hours; frequently use hands for fingering and feeling; frequently balance and stoop but never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs; and occasionally kneel, crouch and crawl. She must avoid concentrated exposure to fumes, dust, gases, perfumes and poor ventilation; hazardous machinery and heights; and uneven terrain. The individual can only have moderate exposure to paint. The individual can understand, recall and carry out simple directions or instructions on a sustained basis and at a normal pace; can complete a normal workday and interact appropriately with co-workers, supervisors and the general public; and can sustain the stressful and routine changes associated with simple, routine and repetitive work; but she cannot make decisions. (Tr. 54).

The VE testified that such an individual could not perform Plaintiff's past work (Tr. 54-55). However, such an individual could perform unskilled work at the light exertional level as a record clerk (Dictionary of Occupational Titles ("DOT") code 203.387-018), hand packer (DOT code 559.687-074), and cashier (DOT code 211.462-010).

### D.   *Plaintiff's Claims of Error*

Plaintiff argues that the ALJ's hypothetical question to the VE was inconsistent with the medical evidence, and the VE's testimony conflicts with the DOT. Plaintiff also argues that the ALJ erred when she found Plaintiff could perform work at the light exertional level, but could not perform her previous receptionist job, which was sedentary.

## III.     DISCUSSION

### A.     *Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.

> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### B.     *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a

zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party." (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

*C. Analysis*

**1. Hypothetical Question to the VE**

Plaintiff's treating physician, Dr. Anthony de Bari, completed a Physical Medical Source Statement that indicates Plaintiff can occasionally and frequently lift less than 10 pounds, stand and walk for two hours and sit less than six hours (Tr. 764).

Plaintiff argues that the ALJ's hypothetical limitations posed to the VE – that Plaintiff can lift 10 pounds frequently and 20 pounds occasionally; and can sit, stand and walk for six hours – were inconsistent with Dr. de Bari's statement.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response

constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325 at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

>Here, the ALJ stated the following regarding Dr. de Bari's statement:
>
>[O]n May 6, 2010, Dr. de Bari completed a Medical Source Statement (Physical) on behalf of [Plaintiff]. Dr. de Bari stated that [Plaintiff] could both occasionally and frequently lift/carry/upward pull less than 10 pounds, could stand/walk (with normal breaks) for a total of [two] hours in an [eight] hour workday, and could sit for less than [six] hours in an [eight] hour workday. Dr. de Bari also stated that [Plaintiff] had severe restrictions with pushing and pulling with both her upper and lower extremities. Dr. de Bari also stated that [Plaintiff] would be continuously disrupted by her limitations in a job with low physical demands and a regular schedule. I give the extreme opinions of Dr. de Bari little to no weight as they are not consistent with, or supported by, the objective evidence in this matter. On August 28, 2008, Dr. de Bari noted that [Plaintiff] had full active and passive range of motion in her elbow, hand, and wrist, even though [Plaintiff] had some diminished grip strength and some sensitivity and soreness with palpation. On that day, Dr. de Bari noted that [Plaintiff] was neurovascularly intact. His progress notes and objective findings in 2009 did not vary much from this earlier report. He reported in December 2009[] that [Plaintiff] had full and unrestricted flexion to extension of the left knee and no substantial ligamentous instability. Overall, such good findings do not support his opinion regarding[] sitting, standing and walking, etc.

(Tr. 27). Under the treating-source rule, "[a]n ALJ must give the opinion of a treating source controlling weight if he finds the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in [the] case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting

-8-

20 CFR § 404.1527(d)(2)); *see also* SSR 96–2p. Furthermore, even where the ALJ finds that a treating physician's opinion is not entitled to controlling weight, he or she must apply the following non-exhaustive list of factors to determine how much weight to give the opinion: (1) "the length of the treatment relationship and the frequency of examination," (2) "the nature and extent of the treatment relationship," (3) the relevant evidence presented by a treating physician to support his opinion, (4) "consistency of the opinion with the record as a whole," and (5) "the specialization of the treating source." *Id.*; 20 CFR § 404.1527.

The treating-source rule also "contains a clear procedural requirement." *Wilson*, 378 F.3d at 544 (citing 20 CFR § 404.1527(d)). In particular, "the [ALJ's] decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96–2p, 1996 WL 374188 at *5; *Rogers*, 486 F.3d at 242. "[A] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243; *see also Wilson*, 378 F.3d at 544 ("[t]he regulation requires the agency to "give good reasons" for not giving weight to a treating physician in the context of a disability determination") (citation omitted).

The ALJ gave "good reasons" for not affording Dr. de Bari's opinion controlling weight: his opinion was not consistent with other medical evidence in the record, was not supported by clinical and laboratory diagnostic technique and was inconsistent with his own treatment notes.[3]

---

[3]It should also be noted that on September 7, 2010, Plaintiff testified that she only saw Dr. de Bari "as needed" and had not seen him in nearly a year (Tr. 41-42).

Instead, the ALJ gave controlling weight to another of Plaintiff's treating sources, Dr. Edmond Messina, who opined on May 13, 2010 – a week after Dr. de Bari's statement – that Plaintiff did not have any restrictions in lifting, carrying, standing, walking and sitting (Tr. 762). The ALJ also gave great weight to the state agency doctor's opinion (Dr. U. Gupta) that Plaintiff could occasionally lift 20 pounds; frequently lift 10 pounds; and stand, sit and walk six hours (Tr. 645). Plaintiff does not object to the weight given Dr. Gupta's opinion, and the physical portion of the ALJ's RFC determination was consistent with that opinion. Accordingly, the hypothetical to the VE incorporated all of Plaintiff's accepted physical and mental limitations, and the VE's testimony constitutes substantial evidence to support a finding that Plaintiff is not disabled.

### 2. VE's Testimony and the DOT

#### a. Hand Packer and Cashier Jobs

The VE testified that Plaintiff could perform unskilled work, but Plaintiff argues that the "hand packer" and "cashier" jobs have an SVP of two, which makes them semi-skilled jobs. Plaintiff's argument lacks merit.

"The DOT lists a specific vocational preparation (SVP) time for each described occupation. Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT." SSR 00-4p. Accordingly, an SVP of two corresponds with unskilled work.

#### b. Record Clerk Job

The VE testified that the "record clerk" job has a DOT code of 203.387-018 (Tr. 55). Plaintiff says this code does not exist in the DOT. Even assuming the VE erred in the DOT code and the Court does not consider the "record clerk" job in determining whether substantial evidence supports the ALJ's decision, it is harmless error. Substantial evidence supports a

finding that Plaintiff could perform the "hand packer" and "cashier" jobs identified by the VE. *See Poe v. Comm'r of Soc. Sec.*, 342 Fed. Appx. 149, 157-58 (6th Cir. 2009).

Furthermore, SSR 00-4p only requires the ALJ to ask the VE whether the testimony is consistent with the DOT and to obtain a reasonable explanation for any apparent conflicts. The ALJ was not under any obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. As stated in *Beinlich v. Comm'r of Soc. Sec.*, 345 Fed.Appx. 163, 168-169 (6th Cir. 2009):

> Even if there were an inconsistency, [Plaintiff] has not pointed to any authority that the ALJ erred in his findings based on the VE's testimony, which went unchallenged by [Plaintiff] until after the ALJ issued his decision. As an initial matter, neither the ALJ nor the VE is required to follow the DOT. *Wright v. Massanari*, 321 F.3d 611, 616 (6th Cir. 2003) (holding that "the ALJ and consulting vocational experts are not bound by the Dictionary in making disability determinations because the Social Security regulations do not obligate them to rely on the Dictionary's classifications"). The ALJ fully complied with SSR 00-4p when he asked the VE ["if [her] testimony differs . . . from the information in the [DOT], will you please let me know"]." *See Lindsley*, 560 F.3d at 606 (holding that the ALJ fulfilled his duties when he asked the VE whether there was any "discrepancy between your opinions and the DOT standards," even if the VE did not disclose a conflict). As *Lindsley* makes clear, the ALJ is under no obligation to investigate the accuracy of the VE's testimony beyond the inquiry mandated by SSR 00-4p. *Id.* This obligation falls to [Plaintiff's] counsel, who had the opportunity to cross-examine the VE and bring out any conflicts with the DOT. The fact that [P]laintiff's counsel did not do so is not grounds for relief. *See Ledford v. Astrue*, 311 Fed.Appx. 746, 757 (6th Cir. 2008).

### 3. Plaintiff can Perform Light Work

Plaintiff's final argument is that the ALJ erred when she found Plaintiff could not perform her past work at the medium and sedentary exertional levels but could perform work at the light exertional level. The Court assumes Plaintiff is arguing that the ALJ's finding is

inconsistent because light work[4] is more demanding than sedentary work,[5] and if she cannot perform her past sedentary work, then she cannot perform light work.[6]

Plaintiff overlooks the fact that the ALJ found she could not perform her past job as a receptionist because it was *semi-skilled* work; the ALJ found Plaintiff could only perform simple work. *See* § 404.1568(a) and (b):

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled jobs.
>
> Semi-skilled work is work which needs some skills but does not require doing the more complex work duties. Semi-skilled jobs may require alertness and close attention to watching machine processes; or inspecting, testing or otherwise looking for irregularities; or tending or guarding equipment, property, materials, or persons against loss, damage or injury; or other types of activities which are similarly less complex than skilled work, but more complex than unskilled work. A job may be classified as semi-skilled where coordination and dexterity are necessary, as when hands or feet must be moved quickly to do repetitive tasks.

Therefore, the VE appropriately identified *unskilled* work Plaintiff could perform at the light level.

**IV. CONCLUSION**

---

[4]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 CFR § 404.1567(b).

[5]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 CFR § 404.1567(a).

[6]Light exertional work is less demanding than medium exertional work.

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, Defendant's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. *See* Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

s/Mark A. Randon  
Mark A. Randon  
United States Magistrate Judge

Dated:  February 13, 2013

*Certificate of Service*

 *I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, February 13, 2013, by electronic and/or ordinary mail.*

        *s/Eddrey O. Butts*
        *(Substitute)*
        *Case Manager*